# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-6749-GW(SSx) | Date | March 7, 2019 |
|---|---|---|---|
| Title | *Halie Bloom, et al. v. ACT, Inc., et al.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie E. Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Jesse M. Creed | Albert M. Bower |
| Jennifer D. Bennett | |

**PROCEEDINGS:**    **DEFENDANT ACT, INC.S' MOTION TO STAY LITIGATION OF NEWLY ADDED PLAINTIFFS M.B.'s AND JANE DOE'S CLAIMS PENDING ARBITRATION [100];**

**PLAINTIFFS' MOTION TO CERTIFY THE COURT'S FINAL RULING ON DEFENDANT ACT, INC.'S MOTION TO STAY LITIGATION PENDING ARBITRATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b) [101];**

**PLAINTIFFS' MOTION OF CERTAIN PLAINTIFFS FOR RELIEF FROM THE COURT'S ARBITRATION RULING UNDER FED. R. CIV. P. 60(B) AND LOCAL RULE 7-18 [102]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court would GRANT the Motion for Relief and conclude that M.B. and Jane Doe are not compelled to arbitration. As to the Motion to Stay II, the Court would DENY the Motion to the extent it seeks to compel M.B. and Jane Doe to arbitration. As to the Motion to Certify, the Court would GRANT the Motion subject to the clarifications made herein.

The Court sets a status conference for May 30, 2019 at 8:30 a.m., with a joint status report to be filed by May 24, 2019. Defendant Act, Inc.'s Motion to Dismiss [98], is VACATED and TAKEN OFF-CALENDAR.

|  | : | 15 |
|---|---|---|
| Initials of Preparer | JG | |

***Bloom v. ACT, Inc.***; Case No. 2:18-cv-06749-GW-(KSx)
Tentative Ruling on:   (1) Motion of Certain Plaintiffs for Relief from the Court's Arbitration
Ruling Under Fed. R. Civ. P. 60(b) and Local Rule 7-18 ("MFR"); (2) Motion to Stay Litigation
of Newly Added Plaintiffs M.B.'s and Jane Doe's Claims Pending Arbitration ("MTS II"); and
(3) Motion of Plaintiffs to Certify the Court's Final Ruling on Defendant ACT, Inc.'s Motion to
Stay Litigation Pending Arbitration for Interlocutory Appeal ("MTC")

## I.  <u>Background</u>

Plaintiffs Halie Bloom ("Bloom"); Devon Linkon ("Linkon"); Emma L.; K.B as legal
parent of John Doe; Steven M. and Molly M. as legal parents of Sam M.; Michelle G. as legal
parent of Alex G.; Andrew L. as legal parent of Caroline L; K.J.B. as legal parent of Jane Doe;
Lisa B. as legal parent of M.B.; and A.C. (collectively, "Plaintiffs") sue ACT, Inc. ("ACT" or
"Defendant") and Does 1-100 pursuant to: (1) three causes of action related to the Americans with
Disabilities Act ("ADA"); (2) an Unruh Act cause of action; (3) a California constitutional right
to privacy cause of action; (4) an unfair competition cause of action under California Business &
Professions Code § 17200; (5) declaratory judgment under 28 U.S.C. § 2201; and (6) a claim under
the Rehabilitation Act (29 U.S.C. § 794).   *See generally* First Amended Complaint ("FAC"),
Docket No. 70.   This action primarily arises out of Defendant's *alleged* practices of: (1) "score
flagging," wherein Defendant discloses student disability information and the use of
accommodations on score reports it sends to colleges, and (2) selling detailed student disability
data to colleges and other third parties.   *See id.*

Before the Court are three motions.   The first is Plaintiffs' motion for reconsideration of
an earlier ruling[1] staying the case pending the arbitration of certain plaintiffs' claims.   *See* Motion
of Certain Plaintiffs for Relief from the Court's Arbitration Ruling Under Fed. R. Civ. P. 60(b)
and Local Rule 7-18 ("MFR"), Docket No. 102.   Defendant filed an opposition to the MFR.   *See*
ACT, Inc.'s Opposition to Motion of Certain Plaintiffs for Relief from the Court's Arbitration
Ruling ("MFR Opp'n"), Docket No. 107.   Plaintiffs filed a reply in support of the MFR.   *See* Reply
in Support of Plaintiffs' Motion for Relief from the Court's Arbitration Ruling ("MFR Reply"),
Docket No. 121.

The second motion is Defendant's motion to stay litigation of newly added plaintiffs'

---

[1] In that ruling, the Court granted a motion to stay litigation pending arbitration as to the claims of Bloom,
Linkon, Emma L., Sam M., Caroline L., and John Doe.   *See* Dec. 4, 2018 Civil Minutes ("Arbitration Ruling"),
Docket No. 86.   To some degree, the Court will clarify and elaborate on that earlier ruling below.

pending arbitration.  *See* Motion to Stay Litigation of Newly Added Plaintiffs M.B.'s and Jane Doe's Claims Pending Arbitration ("MTS II"), Docket No. 100.  Plaintiffs filed an opposition to the MTS II.  *See* Plaintiffs' Opposition to ACT, Inc.'s Motion to Stay Litigation ("MTS II Opp'n"), Docket No. 108.  Defendant filed a reply.  *See* ACT, Inc.'s Reply in Support of Motion to Stay Litigation of Newly Added Plaintiffs M.B.'s and Jane Doe's Claims Pending Arbitration ("MTS II Reply"), Docket No. 113.

The third motion is Plaintiffs' motion to certify the Court's Arbitration Ruling.  *See* Motion of Plaintiffs to Certify the Court's Final Ruling on Defendant ACT, Inc.'s Motion to Stay Litigation Pending Arbitration for Interlocutory Appeal ("MTC"), Docket No. 101.  Defendant filed an opposition to the MTC.  *See* ACT Inc.'s Opposition to Motion of Plaintiffs to Certify the Court's Final Ruling on Defendant ACT, Inc.'s Motion to Stay Litigation Pending Arbitration ("MTC Opp'n"), Docket No. 112.  Plaintiffs filed a reply in support of the MTC.  *See* Reply in Support of Plaintiffs' Motion to Certify for Interlocutory Appeal the Court's Final Ruling on Defendant ACT, Inc.'s Motion to Stay Litigation Pending Arbitration Under 28 U.S.C. § 1292(b) ("MTC Reply"), Docket No. 122.

## II. MFR

### A. Legal Standard

A litigant may bring a motion for reconsideration under Central District Local Rule 7-18, which imposes the following standard:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

C.D. Cal. L.R. 7-18; *see also Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.").  Local Rule 7-18 also prohibits "repeat[ing] any oral or written argument made in support of or in opposition to the original motion."  *Id.* Perhaps even more disfavored than arguments *made* in the original round of briefing, courts are especially unreceptive to arguments that a party *could have* made before, but did not.  *See Marlyn*

*Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (indicating that a motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation" (emphasis in original)) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

### B. Analysis

Sam M. and Caroline L. (collectively, the "MFR Plaintiffs") move for reconsideration of the Court's Arbitration Ruling as to their claims. *See* MFR at 1. They argue that new evidence of their express disaffirmance merits reconsideration of the Arbitration Ruling. The reason for that, according to the MFR Plaintiffs, is that the Court compelled the arbitration of the MFR Plaintiffs' claims because they had "not submitted sufficient evidence of their intent to disaffirm the relevant terms and conditions in their entirety." MFR at 1 (quoting Arbitration Ruling at 8). In response, Defendant argues that these "new" facts were not outside the MFR Plaintiffs' control, and thus they do not constitute grounds for reconsideration. *See* MFR Opp'n at 5-8. Defendant also argues that the MFR Plaintiffs' impermissibly use disaffirmance as both a sword and shield. *See id.* at 9-11.

To refresh the parties as to the law surrounding disaffirmance, the Court will reincorporate much of its discussion of the law from the Arbitration Ruling, with some added clarification. "To evaluate the validity of an arbitration agreement, federal courts [ ] apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). Courts decide whether an arbitration agreement is enforceable pursuant to the law of the state in which the contract was formed. *Id.* With the parties all applying California law in briefing, the Court will apply California law on the question of disaffirmance. According to California law, a minor has the capacity to contract with exceptions enumerated by statute. *See* Cal. Civ. Code § 1557 ("[T]he capacity of a minor to contract is governed by Division 11 (commencing with Section 6500) of the Family Code."); Cal. Family Code § 6700 ("Except as provided in Section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance[.]"). California Family Code Section 6710 provides for a minor's "right of disaffirmance," stating that "[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards[.]" Cal. Family Code § 6710. A minor may exercise disaffirmance "by any act or declaration" indicating intent to disaffirm and "express

3

notice to the other party is unnecessary." *Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972). "No specific language is required to communicate an intent to disaffirm." *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007). Regardless of the chosen method, "[d]isaffirmance by a minor rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012) (citing *Scollan v. Gov't Emps. Ins. Co.*, 222 Cal. App. 2d 181, 183-84 (1963)). The doctrine of disaffirmance "shields minors from their lack of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people." *Sparks v. Sparks*, 101 Cal. App. 2d 129, 137 (1950); *see also Fife*, 904 F. Supp. 2d at 999 (same). In addition, this doctrine reflects a policy "of discouraging adults from contracting with minors." *I.B. ex rel. Bohannon v. Facebook, Inc.*, No. 12-cv-01894-BLF, 2015 WL 1056178, at *4 (N.D. Cal. Mar. 10, 2015) (collecting cases).

The Court also recognizes that "the disability of infancy [is not] a 'sword' rather than a 'shield [.]'" *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012) (applying California law) (internal citation omitted). "The infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit." *See id.* (citing *MacGreal v. Taylor*, 167 U.S. 688, 701 (1897)). But, the Court would add that pursuant to California law, a minor plaintiff can "disaffirm *all* obligations under a contract, *even for services previously rendered*, without restoring consideration or the value of services rendered to the other party." *Deck v. Spartz, Inc.*, No. 2:11-CV-01123-JAM-(DADx), 2011 WL 7775067 at *7 (E.D. Cal. Sept. 27, 2011) (citing *Berg v. Taylor*, 148 Cal. App. 4th 809, 819 (2007) (emphasis added). Reiterating that "[o]ne deals with infants at his peril," the Supreme Court of California held that, "[u]pon disaffirmance the minor is entitled to recover all benefits paid under the contract." *Burnand v. Irigoyen*, 30 Cal.2d 861, 866 (1947). Despite the fact that California Civil Code § 35 mandated that "restoration must accompany disaffirmance of a contract made by a minor when over 18 years," *Burnand,* 30 Cal.2d at 865, that section was repealed and replaced with section 6710 of the Family Code, which "no longer requires restoration of consideration for any disaffirmed contract." *Deck*, 2011 WL 7775067 at *7; *see also Berg*, 148 Cal. App. 4th at 817 (concluding that the minor plaintiff could disaffirm a contract with his manager, thereby reversing judgment against the minor for past commissions and future earnings).

As the MFR Plaintiffs assert, the Court previously rejected the MFR Plaintiffs'

disaffirmance argument on the following basis:

> In light of Sam M.'s, Caroline L.'s, and John Doe's dance around broad disaffirmance in prior briefing (*i.e.* in the Opposition), the Court would note that those plaintiffs have not submitted sufficient evidence of their intent to disaffirm the relevant terms and conditions *in their entirety*. It is also suspect that Linkon, Emma L., and Bloom submitted declarations of disaffirmance, and yet Sam M., Caroline L., and John Doe have not. Based on the foregoing lack of evidentiary support, Sam M., Caroline L., and John Doe have not disaffirmed the applicable terms and conditions and therefore the other clauses therein.

*See* Arbitration Ruling at 8-9 (footnote omitted).  In a footnote attached to the above excerpt, the Court noted the following:

> The Court recognizes that "[n]o specific language is required to communicate an intent to disaffirm. A contract (or conveyance) of a minor may be avoided by any act or declaration disclosing an unequivocal intent to repudiate its binding force and effect. Express notice to the other party is unnecessary." *See Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007) (citations and internal quotation marks omitted). Though express notice of disaffirmance is unnecessary, the fact that Plaintiffs previously indicated something less than disaffirmance of the entire contract in the Opposition at pages 8-9 beckons the Court to require additional evidence of disaffirmance beyond the mere filing of this lawsuit. As such, the Court does not find sufficient evidence that Sam M., Caroline L., and John Doe performed any act or submitted any declaration demonstrating an unequivocal intent to repudiate the entire terms and conditions.

*See id.* at 8-9 n.9.

After the Arbitration Ruling, when Caroline L. had recently turned 18 years old and while Sam M. was still a minor, they sent letters to Defendant expressly disaffirming the applicable terms and conditions.  *See* Declaration of Sam M. Ex. 1 ("Sam M. Letter"), Docket No. 102-2; Declaration of Caroline L. Ex. 1 ("Caroline L. Letter"), Docket No. 102-6.  In Sam M.'s January 14, 2019 letter, he wrote the following to Defendant:

> Notice is hereby given that, pursuant to Section 6710 of the California Family Code, I have disaffirmed on the grounds of my minority the written "Terms and Conditions: Testing Rules and Policies for the ACT Test" (or a variation thereof) contracts claimed to be made between ACT, Inc. and myself at all relevant dates. My disaffirmance is effective immediately.

> The reason for disaffirming is that these contracts purport to limit my rights and remedies under the Americans with Disabilities Act and the Unruh Act, which are the rights I am asserting in my lawsuit against ACT. For example, they limit my right to seek attorney's fees and expenses and my right to seek "special, indirect, consequential, exemplary, or punitive damages," which are remedies allowed by those laws.

> If there are other instances in which ACT claims I agreed to similar Terms and Conditions contracts when I was a minor, I have disaffirmed those as well. I do not understand my disaffirmance of these specific contracts to have any effect on any other transaction with ACT to which I am a party.
>
> Even though I need not even give express notice to ACT, Inc. under California law, I hereby give you express notice of my unequivocal intent to disaffirm.

*See* Sam M. Letter at 1.  Caroline L.'s letter is substantially similar, so the Court need not repeat it here but will incorporate it by reference.  *See* Caroline L. Letter at 1.

As to the sufficiency of the above disaffirmance,[2] the Court would find that disaffirmance unequivocal in repudiating the entire terms and conditions at issue.  Both Sam M. and Caroline L. specifically state that they "have disaffirmed on the grounds of [their] minority the written 'Terms and Conditions: Testing Rules and Policies for the ACT Test' (or a variation thereof) contracts claimed to be made between ACT, Inc. and [themselves] at all relevant dates.   [Their] disaffirmance is effective immediately."  *See* Sam M. Letter at 1; *see also* Caroline L. Letter at 1. The fact that the MFR Plaintiffs disaffirmed either while still a minor or after recently turning 18 supports the Court's recognition of that disaffirmance.  Though Defendant is correct that the MFR Plaintiffs cannot retain the benefits of the contract after now disaffirming (including the receipt of and request for additional score reports), there is no evidence that the MFR Plaintiffs are continuing to avail themselves of those benefits after giving express disaffirmance to Defendant on January 14, 2019, or after reaching the age of majority.

In *C.M.D. ex rel. De Young v. Facebook, Inc.*, the Ninth Circuit noted in its unpublished opinion that "it is a longstanding and general rule of California law that 'a party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill'."  *See* 621 F. App'x 488, 489 (9th Cir. 2015) (citing *Babu v. Petersen,* 4 Cal. 2d 276, 286, 48 P.2d 689 (1935)).  There, the Ninth Circuit held that "[b]y continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract."  *See C.M.D.*, 621 F. App's at 489.  Here, however, the situation is different: the filing of the lawsuit was not what moved the Court to find disaffirmance.  The Court

---

[2] The Court finds that the MFR Plaintiffs' express disaffirmance, rendered after the Arbitration Ruling, constitutes "the emergence of new material facts or a change of law occurring after the time of such decision . . . ." *See* L.R. 7-18.  Though the MFR Plaintiffs indeed could have disaffirmed earlier, the fact of their eventual and unequivocal disaffirmance did not exist at the time of the Arbitration Ruling and they could not be in control of a fact or evidence that had not yet occurred.

considered the express disaffirmance, vis-à-vis letters from the MFR Plaintiffs to Defendant dated January 14, 2019, as the act of disaffirmance in light of prior briefing that put disaffirmance of the entire contract into doubt.  There is no evidence that Plaintiff seeks to retain the benefit or use of the transaction after the date of those letters; the letters themselves disaffirm the contracts at issue in their entirety rather than retaining a benefit of some part of those contracts.  *See* Sam M. Letter at 1; Caroline L. Letter at 1; *see also I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1002 (N.D. Cal. 2012) (holding that "Facebook's motion to dismiss presents the question whether the minor Plaintiffs may disaffirm their contracts even after receiving the benefits of purchasing Facebook Credits. If all the allegations are accepted as true, the minor Plaintiffs allege a claim for declaratory relief that would 'disaffirm the entire contract, not just the irksome portions.'") (citation omitted).

In addition, as mentioned above both MFR Plaintiffs sent their respective letters either while minors or within a reasonable amount of time after reaching the age of majority.  There is no evidence that either of the MFR Plaintiffs continued to benefit from the contracts after reaching the age of majority or after the Court issued the Arbitration Ruling in which it explained the MFR Plaintiffs' disaffirmance was not sufficient.  As such, the Court would conclude that the MFR Plaintiffs have disaffirmed the terms and conditions at issue (including the delegation provision) and would thus vacate the Arbitration Ruling *solely* as to the MFR Plaintiffs in light of that clear and unequivocal disaffirmance.[3]

### III. <u>MTS</u>

In the MTS, Defendant moves to compel two of the newly added plaintiffs to arbitration. *See* MTS at 1, 5-10.  Defendant argues that Jane Doe and M.B. ("New Plaintiffs") agreed to Defendant's terms and conditions under circumstances largely identical to the original plaintiffs, and that the Court should mirror its ruling from the Arbitration Ruling.  *See id.*  Responding to that argument, the New Plaintiffs argue that after expressly disaffirming the contracts at issue on January 14, 2019 and January 15, 2019, neither of them continue to reap the benefits of those terms and conditions.  *See* MTS Opp'n at 11-13.

#### A. Compelling M.B. to Arbitration

It is clear that M.B. has expressly disaffirmed the terms and conditions, as per his letter to

---

[3] The Court would decide the motion to dismiss for lack of personal jurisdiction on March 21, 2019 when it decides Defendant's other motion to dismiss.

Defendant dated January 14, 2019.  *See* Declaration of M.B. Ex. E ("M.B. Letter"), Docket No. 108-6.  There, M.B. wrote the following to Defendant:

> Notice is hereby given that, pursuant to Section 6710 of the California Family Code, I have disaffirmed on the grounds of my minority the written "Terms and Conditions: Testing Rules and Policies for the ACT Test" (or a variation thereof) contracts claimed to be made between ACT, Inc. and myself at all relevant dates.  I understand my counsel previously gave you oral notice of my disaffirmance.
>
> The reason for disaffirming is that these contracts purport to limit my rights and remedies under the Americans with Disabilities Act and the Unruh Act, which are the rights I am asserting in my lawsuit against ACT. For example, they limit my right to seek attorney's fees and expenses and my right to seek "special, indirect, consequential, exemplary, or punitive damages," which are remedies allowed by those laws.
>
> If there are other instances in which ACT claims I agreed to similar Terms and Conditions contracts when I was a minor, I have disaffirmed those as well. I do not understand my disaffirmance of these specific contracts to have any effect on any other transaction with ACT to which I am a party.
>
> Even though I need not even give express notice to ACT, Inc. under California law, I hereby give you express notice of my unequivocal intent to disaffirm.

*See id.*

With no evidence that M.B. has continued to use any benefits (including the sending of score reports) of the terms and conditions after disaffirmance or after the age of majority, the Court would consider M.B. to have expressly disaffirmed the applicable terms and conditions in their entirety.  *See id.*  The Court would adopt similar reasons for finding disaffirmance as stated in Section II above regarding Caroline L. and Sam M., and it would deny the MTS II to the extent it seeks to compel arbitration of M.B.'s claims.[4]  M.B.'s letter to Defendant is unequivocal in his disaffirmance.

### B. Compelling Jane Doe to Arbitration

#### *1. Jane Doe's Lack of Assent to the Terms and Conditions*

---

[4] To the extent M.B. argues in briefing that ordering score reports is unrelated to the terms and conditions he entered into, the Court would reject that argument and caution Plaintiffs from re-arguing already resolved issues. *See* Arbitration Ruling at 9-10.  But here, there is no evidence that M.B. has requested and received score reports after this letter was sent so the Court need not further address the issue.  The Court also need not reach Defendant's argument that M.B. cannot disaffirm the terms and conditions while excluding score reports from his disaffirmance because M.B. does not make such a statement in his disaffirmance letter; instead, he disaffirms the terms and conditions in their entirety and simply says that no other transaction should be affected.  *See* M.B. Letter at 1.

It is undisputed that Jane Doe (as a minor) received and signed a certification accompanying the Answer Folders on three separate test days.  Declaration of Ed Daering Exs. 7-1, 7-2, 7-3.  In taking the test exclusively on paper, Jane Doe signed a certification stating that she "agree[s] to comply with and be bound by the Terms and Conditions: Testing Rules and Policies for the ACT Test, including those terms concerning . . . arbitration . . . ."  *See id.*  There is some evidence that prior to test day, as a matter of policy Jane Doe would have been provided a copy of the *Taking the ACT* booklet, which included a copy of the terms and conditions.  *See* Declaration of Katie Featherston ("Featherston Decl.") ¶¶ 5-6, Docket No. 100-7.   Nonetheless, Jane Doe explicitly declares that she never received the *Taking the ACT Test* booklet, and Defendant fails to submit evidence to the contrary other than the general policy that, if followed, would have hypothetically prevented that from occurring.  *See* Declaration of Jane Doe ¶ 8 ("For all three test administrations, I was never provided a copy of ACT's *Taking the Test* booklet, had no access to such a booklet, never received or reviewed ACT's Terms and Conditions at any time before signing the Certifications.  I have confirmed with the counselor responsible for administering the ACT Tests to me that I did not receive the *Taking the Test* booklet."), Docket No. 108-9.  Based on the evidence presented, the Court would find that Defendant has failed to demonstrate that Jane Doe assented to the terms and conditions on any test day and it thus has no basis to compel Jane Doe to arbitration.[5]

### 2. Whether Jane Doe Disaffirmed and a Clarification of the Arbitration Ruling

As to Jane Doe's disaffirmance argument, the Court would reiterate and elaborate on its earlier decision related to Linkon, Emma L., and Bloom in the Arbitration Ruling.[6]  *See* Arbitration Ruling at 9-10.  To be clear, the Court agrees with Plaintiffs that any pre-disaffirmance *and* pre-majority receipt of benefits is not an impediment to disaffirmance.  Nonetheless, the Court takes issue with plaintiffs who have reached the age of majority and continue to affirmatively request and receive benefits stemming (at least in part) from a contract entered into as a minor, who then

---

[5] The Court would find that the evidence leans in favor of concluding that Jane Doe never possessed the terms and conditions booklet, and there is no reason to think she would have easily been able to locate a copy. *Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1194 (2009) (noting that "to have a valid incorporation by reference, the terms of the document being incorporated must be known or easily available to the contracting parties.") (citation and internal quotation marks omitted).  The Court is not persuaded by Defendant's argument that she should have "Googled" the terms and conditions booklet.

[6] Because the Court would find that Jane Doe did not assent to the terms and conditions in the first place, the Court need not reach her disaffirmance argument.  But, the Court would include the below analysis in part to clarify and elaborate on its prior Arbitration Ruling.

disaffirm the obligations of that contract only after affirmatively obtaining its benefits *as an adult*. Indeed, the Court considers the affirmative request for and the subsequent receipt of benefits as an adult related to score reporting to constitute the ratification of the terms and conditions at issue, disarming an adult plaintiff of his or her right to disaffirm an agreement entered into as a minor.[7]

The Supreme Court of California has held, in the closely related context of estoppel, that "[e]stoppel to disaffirm such a contract [entered into as a minor], assuming original invalidity due to nonage (Civ. Code, § 33), may be created by acts done after the disability of nonage was removed, in this case after the minor arrived at the age of 18." *See Burnand v. Irigoyen*, 30 Cal. 2d 861, 868 (1947); *Dool v. First Nat. Bank*, 209 Cal. 717, 725(1930) (noting the same). Thus, in noting that certain acts after reaching the age of majority can prevent a later disaffirmance (albeit prior to the enactment of California Family Code § 6710), the Supreme Court of California *did not* limit that principle to situations where the adult plaintiffs acted with some specific knowledge of the contract's voidability. *See id.* Many of the cases that Plaintiffs cite in the MTC do not actually apply to this specific situation, but instead stand for the general proposition that *currently minor* plaintiffs may disaffirm a contract in which they received benefits prior to disaffirmance. *See I.B. ex rel. Fife v. Facebook, Inc.*, 905 F.Supp.2d 989, 1004 (N.D. Cal. 2012) (noting that "[m]inor Plaintiffs I.B. and J.W. are represented in this action through their guardians ad litem"); *TK v Adobe Systems, Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *1 (N.D. Cal. April 17, 2018) ("T.K. is a minor who lives in Puerto Rico."); *Berg v Traylor*, 148 Cal. App. 4th 809, 812, 815 (2007) (noting that the plaintiff was 10 years old in 1999 and disaffirmed his contract at the latest in 2005). The Court is furthermore not persuaded by Plaintiffs' argument that "[c]ourts applying California law permit parties to disaffirm after reaching majority without even inquiring into whether any benefits they received were pre- or post-majority − even where the facts of the case strongly suggest that the person received benefits after majority (but before disaffirmance)." *See* MTC[8] at 14 (citing *Maier v. Harbor Center Land Co.*, 41 Cal. App. 79, 80-82 (1919); *Lopez v. Kmart Corp.*, No. 15-CV-01089-JSC, 2015 WL 2062606, at *5 (N.D. Cal. May 4, 2015)). As Plaintiffs admit, the district court in *Lopez* did not actually address the argument (indeed, it does

---

[7] The Court would reject, as it did in the Arbitration Ruling, that the sending of score reports to colleges does not constitute a contractual benefit of the terms and conditions for the same reasons as stated therein. *See* Arbitration Ruling at 9-10.

[8] Because Plaintiffs make similar arguments in the MTC as in the MTS II Opposition, the Court will at times discuss the MTC despite focusing on the MTS II in this section.

not even mention ratification or estoppel), and it did not explicitly note that the plaintiff received benefits and affirmatively acted to ratify the contract *after* reaching the age of majority. *See* Lopez, 2015 WL 2062606, at *5. As to the 1919 case of *Maier*, though the California Court of Appeal there held that payments by the minor after reaching 18 years old did not estop him from disaffirming the contract, that is likely because the contract at issue was for real property and was therefore void rather than voidable; the contract was never subject to ratification. *See* 41 Cal. App. at 81; *see also Burnand*, 30 Cal. 2d at 865 (citing a statute and a 1913 Supreme Court of California case when noting that "[a] contract relating to real property or any interest therein, or personal property not in his immediate possession or control, entered into by a minor under 18 years is void and requires no act of disaffirmance."). Moreover, the California Supreme Court case of *Burnand* came years after *Maier*, and as mentioned, noted that estoppel to disaffirm can indeed be created by acts of an adult plaintiff after reaching the age of majority. *See Burnand*, 30 Cal. at 868.

On the issue of knowledge of the right of voidability, Plaintiffs cite to no California case that holds ratification or estoppel would require knowledge of the contract's voidability for a now adult plaintiff to ratify a contract through actions and the receipt of benefits post-majority (or to be estopped from disaffirming based on those actions and receipt of benefits). *Burnand*, a Supreme Court of California case, proffers no such limitation in noting that "[e]stoppel to disaffirm such a contract [entered into as a minor], assuming original invalidity due to nonage (Civ. Code, § 33), may be created by acts done after the disability of nonage was removed, in this case after the minor arrived at the age of 18." *See* 30 Cal. 2d at 868. The Court has already limited the application of *Maier* for reasons above, but the other cases Plaintiffs cite fare no better. In a California Court of Appeal case, quoting a case from 1894, the court provided that "it is an inherent element of ratification that the party to be charged with it must have fully known what he was doing . . . . '[T]he very essence either of an election or ratification is that it is done advisedly, with full knowledge of the party's rights.' " *Fergus v. Songer*, 150 Cal. App. 4th 552, 572 (2007), *as modified on denial of reh'g* (June 1, 2007) (citing *Brown v. Rouse*, 104 Cal. 672, 676, 38 P. 507, 509 (1894)). Though the quoted line in *Fergus* appears broad, it relates to ratification under California Civil Code Section 1588, which provides that "[a] contract which is voidable solely for want of due consent, may be ratified by a subsequent consent." *See id.* Thus, the situation in *Fergus* (and the situation in the quoted case in *Fergus* for other reasons) did not address ratification or estoppel in the context of a contract entered into as a minor. *See id.*; *see also Brown*, 104 Cal.

at 676.  Another case Plaintiffs cite for the same proposition, *In re Cover's Estate*, 188 Cal. 133, 138, 204 P. 583, 586 (1922), did not involve a contract entered into as a minor.

The Court recognizes that there is little case law that goes in either direction on the narrow issue of knowledge for post-majority ratification of a contract entered into as a minor (or estoppel based on actions taken and benefits received in adulthood).  Indeed, one California-specific treatise does not mention a knowledge requirement when discussing this issue:

> Certain acts by a minor, upon reaching the age of majority, prevent him or her from disaffirming a voidable contract if these acts amount to ratification of the contract. [*Burnand v. Irigoyen*, 30 Cal. 2d 861, 186 P.2d 417 (1947)] Examples of acts of ratification include continuing to make payments under a voidable contract after reaching majority [*see, e.g.*, *Burnand v. Irigoyen*, 30 Cal. 2d 861, 186 P.2d 417 (1947)], as well as accepting the benefits of a voidable contract after reaching majority [*see, e.g.*, *Simmons v. Briggs*, 69 Cal. App. 447, 231 P. 604 (3d Dist. 1924)]. Acts done while still a minor, however, will not estop the minor from disaffirming the contract. Thus, a minor is not estopped from disaffirming a voidable contract as a result of misrepresentations that he or she is an adult. [*Lee v. Hibernia Sav. & Loan Soc.*, 177 Cal. 656, 171 P. 677 (1918)].

*See* Cal. Civ. Prac. Business Litigation § 24:22 (2018) (brackets in original).

The Court would also note that treatises that are not California-specific recognize a split among courts nationwide as to a knowledge requirement in this context.  But, the Court has not found a treatise that actually cites to *California law* as requiring knowledge of voidability in this situation.  In one leading treatise on the subject, though not binding on this Court, the authors provide a synopsis of ratification in the context of contracts entered into as a minor:

> Silence by a minor upon reaching the age of majority, however, is not sufficient to ratify a contract. The intent to ratify need not be expressly declared but may be inferred from the affirmative actions of the infant. Such intent or purpose may be, and ordinarily is, inferred from the free and voluntary acts of the party to be charged although he or she may not have in mind any definite intent or purpose to ratify. If a minor, after becoming of age, does any distinct and decisive act clearly showing an intention to affirm a contract or deed made during his or her minority, the infant will be deemed to have ratified the contract or deed. Thus, any conduct on the part of a former infant which evidences his or her decision that the transaction shall not be impeached is sufficient to ratify a contract made during minority.

*See* John Bourdeau, AMJUR INFANTS § 106 (2019) (footnotes omitted).  Then, in that same treatise, the authors note a conflict among various courts on whether knowledge of the contract's voidability by reason of infancy is necessary for ratification:

> There is a conflict of judicial opinion upon the question whether knowledge

> that one's contract or conveyance is voidable by reason of infancy is a necessary
> element of a ratification thereof after reaching maturity. Some courts take the view
> that such knowledge is a necessary element of a ratification. Other cases, however,
> hold that an infant's contract may be deemed ratified by his or her acts or conduct
> even when he or she at the time of such acts or conduct does not know he or she
> has the right to avoid the contract.

*See id.* § 107.  There is no citation in that treatise, however, to such a knowledge requirement in California.  Similarly, in another leading treatise, the authors do not cite to any California law when discussing knowledge in the context of contracts entered into as a minor.  *See* Samuel Williston, 12 Williston on Contracts § 9:17 (4th ed.) (2018) (footnotes omitted).

Ultimately, the Court must make a determination regarding this narrow issue and it will stick with its prior ruling that knowledge of voidability is not a requirement in the context of post-majority ratification of a contract entered into as a minor when that person *as an adult* receives benefits derived from that contract and affirmatively acts to ratify that contract.  The Court would hold the same for estoppel in this particular context.  Because Jane Doe has presented evidence putting her assent to the terms and conditions in question, the disaffirmance determination herein is not dispositive in her case.  But, the Court would extend the lengthier reasoning in this tentative ruling to the Arbitration Ruling and the plaintiffs it addressed.  To the extent the Court merely implied the aforementioned reasoning in the Arbitration Ruling, the Court would now explicitly find that Linkon, Emma L., and Bloom have, as adults, ratified the contracts they sought to disaffirm through affirmative acts and the receipt of benefits taken post-majority.  To the extent estoppel is distinct from ratification in this context, the Court would additionally find that those plaintiffs are estopped from disaffirming the contracts at issue.

## IV. <u>MTC</u>

### A. Legal Standard

As the Ninth Circuit has summarized, the requirements for § 1292(b) certification "are (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation."  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).  In relevant part, 28 U.S.C. § 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves a
> controlling question of law as to which there is substantial ground for difference of

opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order[.]

28 U.S.C. § 1292(b).

When evaluating a request for § 1292(b) certification, a district court must remember that interlocutory appeals exist not "merely to provide review of difficult rulings in hard cases."  *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966); *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002); *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959) (indicating that it "is to be applied sparingly and only in exceptional cases"); *cf. Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (indicating that party seeking interlocutory review "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment").  Instead, certification under §1292(b) "is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."  *James*, 283 F.3d at 1068 n.6.

## B. Analysis

In the MTC, Plaintiffs request that the Court certify two questions for interlocutory appeal that purportedly fulfill the above standard:

1. Whether [incorporation by] reference to the American Arbitration Association's rules [which includes a rule regarding delegation] in the contract of an unsophisticated party constitutes a "clear and unmistakable" delegation to the arbitrator of the power to decide [questions of arbitrability]; and

2. Whether under California law a party's otherwise-clear disaffirmance after turning eighteen of a contract entered as a minor is insufficient [due to ratification or estoppel], [] because the party [] received benefits [and affirmatively acted] under the contract before disaffirmance [but after reaching the age of majority] without any evidence of knowledge or notice of the potential legal effect of receiving such benefits [or affirmatively acting].

*See* MTC at 1.[9]

---

[9] The Court has modified these two questions with brackets to strip them of their argumentative edge and to clarify the Court's Arbitration Ruling to the extent Plaintiffs did not already understand it.  In addition, the Court would reincorporate the discussion regarding Jane Doe's disaffirmance above because that discussion clarifies and elaborates on the Court's earlier Arbitration Ruling.  Plaintiffs would need to include this elaborated reasoning in any certified appeal of the Arbitration Ruling.

### 1. Controlling Question of Law

Plaintiffs argue that the two questions above constitute controlling questions of law. *See* MTC at 3-6. Without an interlocutory appeal, Plaintiffs assert that the arbitrators may make thousands of determinations regarding arbitrability and the merits that could ultimately be void if the Ninth Circuit later reverses the Court's Arbitration Ruling. *See id.* According to Plaintiffs, this would impact who could stand as class representatives. *See id.* In response, Defendant argues that neither question that Plaintiffs seek to certify presents a controlling question of law. *See* MTC Opp'n at 7-9. Defendant asserts that under Plaintiffs' argument, any order compelling arbitration would involve a controlling question of law because of the possibility of unnecessary arbitration proceedings if an order was ultimately reversed. *See id.* Defendant also argues that neither question is purely legal in that the delegation question involves the sophistication of the parties and the disaffirmance question involves whether Plaintiffs received benefits under the terms and conditions after reaching the age of majority. *See id.* at 10-11. Plaintiffs respond that the specific questions they seek to certify strip away any factual issues at play. *See* MTC Reply at 8-10.

Under Ninth Circuit precedent, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. District courts also look at whether the questions raised are purely legal or, instead, turn on complex or disputed facts. *Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993) (accepting order on interlocutory appeal while stating "the presence of a pure legal question permits the court to resolve all questions material to the order"); *see also McFarlin v. Conseco Servs., LLC,* 381 F.3d 1251, 1259 (11th Cir. 2004) (stating that "§ 1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts").

In the context of certifying questions related to arbitration, the Ninth Circuit has held that "an order may involve a controlling question of law if it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996), *as amended* (July 5, 1996). Indeed, "[a] contrary holding would render meaningless the acknowledgment in 9 U.S.C. § 16(b) that an interlocutory order pursuant to the Federal Arbitration Act may in some circumstances satisfy the requirements of 28 U.S.C. § 1292(b)." *See id.* There have been, as Plaintiffs point out, multiple

district courts in this Circuit that have granting interlocutory certification relating to issues of arbitration. *See, e.g.*, *Roberts v. AT&T Mobility LLC*, No. 15-CV-03418-EMC, 2016 WL 3476099, at *1 (N.D. Cal. June 27, 2016) ("As Plaintiffs argue, interlocutory appeal will materially advance the ultimate termination of this litigation because, regardless of the result of the arbitration proceedings, Plaintiffs are likely to appeal their case to the Ninth Circuit . . . ."); *Youssofi v. Credit One Fin.*, No. 15-CV-1764-AJB-(RBBx), 2016 WL 6395086, at *4-5 (S.D. Cal. Oct. 28, 2016) (holding that "if the length of time spent on appeal were sufficient to defeat a motion for interlocutory appeal, no such appeal could ever be taken"); *Hoffman v. Citibank (S. Dakota), N.A.*, No. SACV06-0571-AGM-(ILGx), 2007 WL 5659406, at *4 (C.D. Cal. Feb. 15, 2007) (holding that an interlocutory appeal "could materially advance the litigation by allowing Plaintiff's claims to move forward without an unnecessary arbitration, giving the parties an opportunity to settle or dismiss without having to wait for an appeal following final judgment. The Ninth Circuit has previously accepted interlocutory appeals from orders compelling arbitration while court proceedings are stayed, implying such appeals do have the potential to materially advance the litigation.").

Though there are instances where courts in this Circuit have expressed a distaste for interlocutory appeals regarding arbitration questions (including the delegation question that would go up on appeal here), the Court does not find those cases as compelling in light of the reasoning delineated in the aforementioned decisions. *See Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2018 WL 934875, at *1-*2 (N.D. Cal. Feb. 16, 2018) (denying certification of delegation question, in part because litigation had already been pending for multiple years). The Court would conclude that the two questions Plaintiffs seek to certify could very well "result in sidestepping 'needless expense and delay of litigating an entire case in a forum that has no power to decide the matter,' [which] is a controlling question of law." *See Youssofi*, 2016 WL 6390586, at *3 (quoting *Kuehner*, 84 F.3d at 319). The Court would consider the above questions to be purely legal. Regardless of any factual disputes, if the Ninth Circuit ruled against this Court on the disaffirmance question, certain plaintiffs would instead have their home in this Court rather than in arbitration. The same goes for the delegation question: if the Ninth Circuit disagrees that the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator, then this Court would be the proper place for certain threshold determinations rather than arbitration. The delegation question does not require the Ninth Circuit to decide the factual issue of whether the plaintiffs here

16

constitute sophisticated parties, but rather the Ninth Circuit would determine whether sophistication of parties matters at all in the delegation inquiry.[10]   As such, Plaintiffs have demonstrated that these two questions present controlling questions of law.

### 2. Substantial Grounds for Difference of Opinion

In deciding whether "a substantial ground for difference of opinion exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  "Courts traditionally will find . . . a substantial ground for difference of opinion" if the controlling question presents a "novel and difficult question[] of first impression[.]"  *Id.*  Stated differently, a "substantial ground for difference of opinion exists where reasonable jurists *might* disagree on an issue's resolution, not merely where they have *already* disagreed."  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (emphasis added).  "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."  *Id.*

As to the delegation question, the Court recognized in the Arbitration Ruling that the Circuit is (somewhat) split on this issue.  Though the Ninth Circuit has held that incorporation of AAA Rules into a contract by reference suffices for sophisticated parties to delegate the arbitrability determination to the arbitrator, it has not expressly extended that principle to unsophisticated parties such as Plaintiffs.  In *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015), the Court held that, as it had done in the past, "we limit our holding to the facts of the present case which do involve an arbitration agreement 'between sophisticated parties.'"  *See id.* (quoting *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1075 n.2 (9th Cir. 2013)). The Ninth Circuit explicitly noted, however, that:

> Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.  *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687

---

[10] In addition, it does not appear that Defendant ever asserted (outside of the MTC briefing) that the Plaintiffs at issue are sophisticated rather than unsophisticated parties.

F.3d 671, 675 (5th Cir. 2012); *Republic of Arg. v. BG Grp. PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10-12 (1st Cir. 2009).

*See Brennan*, 796 F.3d at 1131.  Though the Ninth Circuit refrained from making a determination as to *unsophisticated* parties, the aforementioned "statement strongly indicates approval of other decisions enforcing arbitrability delegation via incorporation of the AAA rules [regardless of sophistication]."  *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (citing *Brennan*, 796 F.3d at 1131).

The general trend since *Oracle America* is to allow arbitrability delegation vis-à-vis the incorporation of AAA rules, regardless of the parties' sophistication.  *See Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015) (collecting cases and holding that this trend is "supported by nearly every subsequent decision in the Northern District of California, which has consistently found effective delegation of arbitrability regardless of the sophistication of the parties."); *but see Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014), *aff'd on other grounds*, No. 14-16405, 2016 WL 6072192 (9th Cir. Oct. 13, 2016). Similarly, the trend in disregarding sophistication has continued after *Brennan*.  *See Cordas*, 228 F. Supp. 3d at 992 (reiterating the same trend and holding that "[a]ltogether, the clear weight of authority supports the conclusion [that the defendant's] terms and conditions provide clear and unmistakable evidence of the parties' intent to delegate questions of arbitrability to an arbitrator [regardless of party sophistication], and [the plaintiff] has advanced no persuasive argument to the contrary."); *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1012 (S.D. Cal. 2017) (agreeing with "courts in this Circuit [that] have found that incorporation of an arbitrator's procedural rules into an arbitration agreement constitutes a clear delegation of arbitrability without regard to a party's sophistication."); *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) (siding with the "greater weight" of authority in holding that *Brennan* applies to unsophisticated parties); *Miller v. Time Warner Cable Inc.*, No. 8:16-CV-00329-CAS-(ASx), 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016) (holding that "the greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties.").  The Court sided with the overwhelming weight of authority and concluded that threshold questions of arbitrability can be delegated to the arbitrator through incorporation of the

AAA Rules regardless of the contracting parties' sophistication.   Thus, the Court held that incorporation of the AAA Rules into the terms and conditions constitutes a clear and unmistakable delegation of the question of arbitrability to the arbitrator.

Nonetheless, there are some district court cases that have held to the contrary, such as *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at \*3 (N.D. Cal. Nov. 14, 2016).   There, the district court held that "[e]very district court decision in our circuit to address the question [of whether a delegation provision applies to unsophisticated parties] since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party."   *See id.*   The cited cases above make clear that this holding misstates the district court trend on this issue, but the failure of the Ninth Circuit to explicitly rule on this issue, the policy considerations at play, and the legal arguments of other district courts lead this Court to conclude that a reasonable jurist might disagree with the overall trend and the Court's Arbitration Ruling on delegation.

Regarding the question of disaffirmance, the Court would similarly find that reasonable jurists might disagree with the Arbitration Ruling and the more thorough reasoning discussed herein.   As addressed in detail above, the parties have not pointed the Court to any applicable case where a now adult plaintiff could disaffirm a contract entered into as a minor after receiving benefits and affirmatively taking actions to ratify the contract after reaching the age of majority. Similarly, the parties have not pointed the Court to a case explicitly holding the opposite conclusion regarding ratification or estoppel *in this context*.   Thus, the Court would conclude that reasonable jurists might disagree with the Court's decision as originally reasoned in the Arbitration Ruling and as clarified above in this tentative order.   Both of the questions that Plaintiffs seek to certify are relatively novel legal questions "on which fair-minded jurists might reach contradictory conclusions . . . ."   *Reese*, 643 F.3d at 688.

### 3. Material Advancement of Ultimate Resolution

The Court must consider one final factor: whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation."   28 U.S.C. § 1292(b).   A district court should only certify an interlocutory appeal when certification "would avoid protracted and expensive litigation."   *In re Cement Antitrust Litig.*, 673 F.2d at 1026.   On the other hand, if an interlocutory appeal would delay the ultimate resolution of a case, the Court should not grant certification.   *See Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988).

The Ninth Circuit has explained that § 1292(b) does not require "that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688; *see also Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F.Supp.2d 1081, 1093 (E.D. Cal. 2008) ("the Ninth Circuit has not limited 1292(b) motions to actions where the question is dispositive of the entire action").

With this criterion closely tied to the controlling question of law criterion, the Court would hold for similar reasons as discussed above that certification could avoid "needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Kuehner*, 84 F.3d at 319; *see also Mann v. Cnty. of San Diego*, No. 3:11-cv-0708-GPC-BGS, 2016 WL 245480, at *3 (S.D. Cal. Jan. 21, 2016) ("The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law . . . . [Q]uestions found to be controlling commonly involve the possibility of avoiding trial proceedings, or at least curtailing and simplifying pretrial or trial . . . . If present appeal promises to advance the time for trial or to shorten the time required for trial, appeal is appropriate." (citation omitted)); *Youssofi*, 2016 WL 6395086, at *4-5 (holding that an immediate appeal would materially advance the litigation's end because doing so might avoid unnecessary arbitration proceedings).

In sum, Plaintiffs have carried their burden of demonstrating that the three relevant criteria cut in favor of granting the MTC.  The Court would therefore grant the MTC with the caveats addressed in this tentative order.

## V. <u>Conclusion</u>

For the foregoing reasons, the Court would **GRANT** the MFR and conclude that M.B. and Jane Doe are not compelled to arbitration.  As to the MTS II, the Court would **DENY** the MTS II to the extent it seeks to compel M.B. and Jane Doe to arbitration.  As to the MTC, the Court would **GRANT** the MTC subject to the clarifications made herein.