PANISH SHEA & BOYLE LLP
RAHUL RAVIPUDI, State Bar No. 204519
*ravipudi@psblaw.com*
JESSE MAX CREED, State Bar No. 272595
*creed@psblaw.com*
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: 310.477.1700
Facsimile: 310.477.1699

GUPTA WESSLER
JENNIFER D. BENNETT, State Bar No. 296726
*jennifer@guptawessler.com*
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 569-6979

Attorneys for Plaintiffs

MILLER ADVOCACY GROUP PC
MARCI LERNER MILLER, State Bar No. 162790
*marci@milleradvocacy.com*
1303 Avocado Ave., Suite 230
Newport, CA 92660
Telephone: (949) 706-9734

Attorneys for Plaintiffs and Plaintiff-Intervenor

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

HALIE BLOOM, *et al.*, and all others similarly situated.

Plaintiffs,

v.

ACT, INC., a corporation, and DOES 1-100.

Defendant.

JAQUEL PITTS, an individual, and all others similarly situated,

Plaintiff-Intervenor,

v.

ACT, INC., a corporation, and DOES 1-100.,

Defendant.

Case No.: 2:18-CV-06749-GW-KS
District Judge George H. Wu;
Magistrate Judge Karen L. Stevenson

**NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT UNDER FED. R. CIV. P. 23(e), (2) FOR APPROVAL OF AWARD OF ATTORNEY'S FEES AND COSTS, AND (3) FOR APPROVAL OF CLASS REPRESENTATIVE SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: April 1, 2021
Time: 8:30 a.m.
Crtrm.: 9D

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 1, 2021, at 8:30 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable , located in the United States Courthouse, 350 W 1st St, Los Angeles, CA 90012, Plaintiffs will and hereby do move this Court under Fed. R. Civ. Proc. 23(e) for a Final Order and Judgment in this action:

(a) Granting final approval of the proposed class action settlement that would resolve this litigation;

(b) (i) Finally certifying the following class under Rule 23(b)(2) for settlement purposes:

*Injunctive Relief Class:* All individuals in the United States who meet either of the following criteria: (a) took the ACT Test through Special Testing at any time or (ii) provided an Eligible SPS Question 8 response at any time.

(ii) Finally certifying the following subclasses under Rule 23(b)(3) for settlement purposes:

*California Disclosure Subclass*: All individuals who meet all of the following criteria in connection with any single administration of the ACT Test according to ACT's records: (a) took an ACT Test on or after September 1, 2002, and on or before August 2, 2020; (b) resided in California at the time they took the ACT Test or took the ACT Test in California; and (c) satisfies at least one of the following criteria: (i) such individual provided an Eligible SPS Question 8 Response or (ii) such individual was administered the exam through Special Testing.

*California EOS Subclass*: All individuals who meet the following criteria in connection with any single administration of the ACT Test according to ACT's records: (a) took an ACT Test through Special Testing on or after September 1, 2007, and before August 2, 2020; (b) resided in California at the time they took the ACT Test or took the ACT Test in California; and (c) left the response to the EOS enrollment question blank on the Special Testing answer folder for at least one exam.

(c) Confirming the Court's prior appointment of Panish, Shea & Boyle LLP and

Miller Advocacy Group as class counsel, and the Court's prior appointment of (i) all Plaintiffs as class representatives of the Injunctive Relief Class, (ii) Halie Bloom, Devon Linkon, Jaquel Pitts, M.B., Jane Doe, A.C., and John Doe as class representatives for the California Disclosure Subclass, and (iii) Halie Bloom, Devon Linkon, M.B., Jane Doe, A.C., and John Doe as class representatives for the California EOS Subclass.

(d) Entering the Consent Decree in the form attached to the Settlement Agreement as a final order in this action, to be effective as of the Effective Date of the Settlement Agreement[1];

(e) Approve Service Awards consistent with the Settlement Agreement in the amount of $5,000 from the Settlement Amount for each Class Representative (as defined in the Settlement Agreement), totaling $50,000;

(f) Approve an award of reasonable attorneys' fees from the Settlement Amount to Class Counsel in the amount of $3,921,365.77, which is equal to 24.5% of the total recovery;

(g) Approve the reimbursement of litigation expenses from the Settlement Amount to Class Counsel in the amount of $78,634.23; and

(h) Entering a final order and judgment in this action.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Jesse Creed, Michelle Robinson, Marci Miller, and Jennifer Bennett filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

[1] All capitalized terms not otherwise defined in this brief, but defined in the Settlement Agreement, have the meanings assigned in the Settlement Agreement.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

DATED: March 18, 2021

PANISH SHEA & BOYLE LLP

By: *\/s\/ Jesse Creed*
Jesse Creed
Attorneys for Plaintiffs

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. Third Amended Complaint ........ 3

B. Procedural History ........ 4

C. Terms of the Settlement ........ 5

1. Benefits under Consent Decree to all U.S. Class Members ........ 6

2. Money Damages under Settlement Agreement to California Class Members ........ 8

D. Notice Program ........ 10

III. THE SETTLEMENT MERITS FINAL APPROVAL ........ 11

A. Legal Standard ........ 11

B. The Court Should Finally Certify the Class for Settlement Purposes ........ 11

C. The Settlement Is Fair, Adequate, and Reasonable ........ 12

1. Adequacy of Representation (Rule 23(e)(2)(A)) ........ 13

2. Arm's Length Negotiations (Rule 23(e)(2)(B)) ........ 14

3. Adequacy of Proposed Relief (Rule 23(e)(2)(C)) ........ 14

(a) Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i)) ........ 14

(b) Effectiveness of Proposed Method of Distribution (Rule 23(e)(2)(C)(ii)) ........ 15

(c) Attorney's Fees and Various Costs (Rule 23(e)(2)(C)(iii)) ........ 15

4. Equitable Treatment of Class Members (Rule 23(e)(2)(D)) ........ 15

5. Identification of All Agreements Made in Connection with the Proposal (Rule 23(e)(3)) ........ 16

D. The Parties Complied with the Notice Program Approved by the Court ........ 16

IV. THE COURT SHOULD AWARD CLASS COUNSEL $4 MILLION IN ATTORNEY'S FEES AND LITIGATION EXPENSES ........ 16


PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

A. The Court Should Approve an Award of $3,921,365.77 in Attorney's Fees to Class Counsel from the Common Fund ................. 17

1. Results Achieved for the Class ................................................. 18

2. Risk of Litigation ........................................................................ 18

3. Skill Required and Quality of Work .......................................... 19

4. Contingent Nature of the Fee ..................................................... 20

5. Awards Made in Similar Cases ................................................. 20

6. Lodestar Cross-Check ................................................................ 21

B. The Court Should Approve Reimbursement of $78,634.23 in Litigation Expenses from the Common Fund ....................................... 24

V. THE COURT SHOULD APPROVE CLASS REPRESENTATIVE SERVICE AWARDS IN THE AMOUNT OF $5,000 EACH ....................... 24

VI. CONCLUSION ........................................................................................ 25

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) .......... 11

*Grove City Coll. v. Bell*, 465 U.S. 555 (1984) .......... 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) .......... 11, 12

*Station v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) .......... 11

## TREATISES

28 U.S.C. § 1292(b) .......... 4

34 C.F.R. § 104.42(c) .......... 7

Fed. R. Civ. P. 23 .......... 12, 13

Fed. R. Civ. P. 23(a) .......... 12

Fed. R. Civ. P. 23(b)(2) .......... 12

Fed. R. Civ. P. 23(b)(3) .......... 12

Fed. R. Civ. Proc. 23(e) .......... 2

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**I. INTRODUCTION**

Plaintiffs, who are students with disabilities, respectfully request the Court enter an order granting final approval of their proposed class action settlement (the "Settlement") with Defendant ACT, Inc. to resolve claims of score-flagging and discriminatory exclusion of students with disabilities from ACT's successful college-recruitment program. The Settlement requires ACT to pay $16 million in non-reversionary cash to a common fund and – in a complete recovery for the Americans with Disabilities Act claims – to cease the policies challenged as score flagging and ensure a full and equal opportunity for examinees with the most severe disabilities to enroll in ACT's college-recruitment programs in the same manner as all other examinees. The Settlement is an outstanding result that achieves this lawsuit's central goal of meaningful, permanent, and nationwide institutional change at ACT – which administers the most prevalent college-admission standardized test in the nation – and recovery for those who were previously subject to ACT's challenged policies. To give a stark example, ACT's Special Testing examinees will now have an equal opportunity as everyone else to make it onto Harvard College's coveted "search list," which Harvard (like most other colleges) purchases from ACT and uses to recruit high school students; students on Harvard's "search list" are then twice as likely to be admitted. *See Students for Fair Adm., Inc. v. Harvard Coll.*, 397 F. Supp. 3d 126, 135 (D. Mass. 2019); P.'s Prop. Supp. Compl., ECF No. 240-2 at ¶ 3. Harvard is simply a visible example of hundreds of institutions using ACT's college-recruitment program.[2] This Consent Decree will open doors for thousands of ACT's current and future Special Testing examinees to college and scholarship opportunities.

On October 1, 2020, after years of contested litigation, this Court granted

[2] The only reason Plaintiffs had visibility into Harvard's practices is because the Dean of Admission of Harvard College testified in the lawsuit challenging Harvard's affirmative action program about Harvard's "search list," the data sources of its search list (i.e. ACT), and Harvard's studies analyzing the relationship between being on the search list and the likelihood of admission. *See* P.'s Prop. Supp. Compl., ECF No. 240-2 at ¶ 3.

preliminary approval of a settlement providing for $16 million in monetary relief as well as a permanent, nationwide consent decree to resolve Plaintiffs' putative class action against ACT, Inc. ("ACT") under the Americans with Disabilities Act, the Unruh Act, and other California state law claims. ECF No. 274 & 275. At that time, the Court concluded the settlement was "likely" "fair, adequate and reasonable." Min. on P.'s Mot. for Prelim. Approv. ("Prelim. Approval Op."), ECF 275 at 12, 14-15. Plaintiffs seek final approval of the settlement, as nothing has occurred since then that would change the Court's preliminary conclusion. Most notably, not a single proposed class member has objected to the settlement's terms. *See* Decl. of Michelle Robinson ("Robinson Decl.") ¶ 15. Only two among 56,049 class members (0.004%) have opted out. Given the result, the risks, and the positive response from the class members, Plaintiffs respectfully request this Court make a finding that the settlement is fair, adequate and reasonable and enter a final order and judgment upon approval of the settlement pursuant to Rule 23(e)(2).

With substantial monetary and nonmonetary benefits going to the classes, the settlement is even more notable considering the substantial risks Plaintiffs and class members faced. Arbitration-related rulings requiring nineteen separate briefs resulted in an interlocutory appeal to the Ninth Circuit and uncertainty for thousands of class members. Factual issues surrounding the statute of limitations and delayed discovery put the claims of portions of the classes at risk. ACT vigorously contested Plaintiffs' claims of discrimination on the merits, challenging the pleadings twice by motion. Although Plaintiffs' claims permitted recovery up to $4,000 in statutory damages, this Court appropriately recognized such a recovery was "far from certain." Prelim. Approv. Op. at 15. To obtain such recovery for the class, Plaintiffs would need to completely prevail through a contested class certification motion, then at summary judgment and trial, and then survive any appeals, delaying relief to class members for years and potentially denying judicial relief for some.

Only after months of arms-length negotiations shepherded by the Honorable

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

Louis Meisinger (Ret.) did Plaintiffs achieve the monetary and injunctive components of the settlement. Those benefits provide real relief to class members and ensure the practices alleged in the complaint are never again repeated by the largest standardized testing company for college admission by tests given in the United States.

## II. BACKGROUND

### A. Third Amended Complaint

Plaintiffs alleged the following in their Third Amended Complaint ("TAC"), ECF No. 205:

ACT, Inc. ("ACT") administers the ACT Test, a standardized exam required for college admissions. TAC ¶ 1. ACT offers examinees EOS. *Id.* EOS is a service offered to colleges to allow them to search for ACT examinees along a number of search criteria, identify recruitment pools, and target their recruitment messaging. *Id.* After identifying recruitment pools through EOS, colleges send those ACT examinees materials to solicit them to apply for admissions and scholarships. *Id.* The college may inform examinees about scholarship and financial aid opportunities. *Id.*

Plaintiffs are individuals with disabilities who took the ACT Test with accommodations and have applied and/or intend to apply to college. TAC ¶¶ 106-187. Plaintiffs challenged three policies or practices of ACT as violating federal and California disability discrimination laws. First, Plaintiffs alleged that ACT reported that Plaintiffs had disabilities to colleges on their college score reports and marked the score reports of Plaintiffs with one or more annotations indicating that they took the ACT with accommodations. TAC ¶¶ 2, 21-22. This practice is hereinafter referred to as the "Alleged Score Flagging Practices." Second, Plaintiffs alleged that Plaintiffs had to overcome additional, unknown burdens to enroll in EOS by requiring those Plaintiffs to affirmatively enroll in an answer document on test day at the testing site. TAC ¶ 26. This practice is hereinafter referred to as the "Special Testing EOS Practice." Third, Plaintiffs alleged that ACT permitted colleges to target and/or exclude Plaintiffs on the basis of their disabilities by using their disabilities as a

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

searchable data element in EOS. TAC ¶ 2. This practice is hereinafter referred to as the "Alleged EOS Disability Search Practice." Because class members subject to the Alleged EOS Disability Search Practice are equally subject to the Alleged Score Flagging Practices, there is not a separate class definition for those class members.

Plaintiffs brought claims under the Americans with Disabilities Act ("ADA"), California's Unruh Act, the Rehabilitation Act, California's Unfair Competition Law, California's Constitution, and the Declaration Relief Act. TAC ¶¶ 2. Plaintiffs sought nationwide injunctive relief for the ADA claims (as the ADA generally does not provide compensatory damages) and monetary damages under California's Unruh Act and California's Unfair Competition Law only. *See* TAC ¶¶ 235, 251, 316.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**B. <u>Procedural History</u>**

Plaintiffs filed a Complaint on August 6, 2018. *See* Compl., ECF No. 1. Plaintiffs filed a motion for preliminary injunction on August 30, 2018. *See* P.'s Mot. for Prelim. Inj., ECF No. 11. The Court required ACT to stipulate to ceasing the practice challenged in the motion for preliminary injunction as a condition to denying the motion. *See* Sept. 27, 2018 Order, ECF No. 45.

On September 11, 2018, ACT filed a motion to stay the claims of certain plaintiffs pending arbitration. *See* D.'s Mot. to Stay, ECF No. 24. On December 4, 2018, the Court granted ACT's motion. *See* Dec. 4, 2018 Order, ECF No. 86. On January 22, 2019, ACT filed a motion to stay the claims of newly-added plaintiffs. *See* D.'s Mot. to Stay, ECF No. 100. On the same day, Plaintiffs filed a motion to certify the Court's December 4 arbitration ruling for interlocutory appeal under 28 U.S.C. § 1292(b) and a motion for relief from the Court's arbitration ruling. ECF No. 101. On March 7, 2019, the Court denied ACT's motion to stay the claims of newly-added plaintiffs and granted Plaintiffs' motion to certify the Court's December 4 arbitration ruling for interlocutory appeal under 28 U.S.C. § 1292(b) and motion for relief from the Court's arbitration ruling. *See* Mar. 7, 2019 Order, ECF No. 126. On May 31, 2019, the Ninth Circuit granted Plaintiffs' petition to file an interlocutory

appeal. *See* May 31, 2019 Order, ECF No. 151.

Plaintiffs filed a First Amended Complaint on October 22, 2018, *see* First Am. Compl., ECF No. 70, and a Second Amended Complaint on May 10, 2019, *see* Second Am. Compl., ECF No. 141. On May 29, 2019, ACT filed a motion to dismiss the claims of certain plaintiffs for lack of personal jurisdiction, *see* ECF No. 148, and a motion to dismiss certain claims under Rule 12(b)(6), *see* ECF No. 147. The Court denied ACT's motion to dismiss for lack of personal jurisdiction but granted in part ACT's motion to dismiss certain claims under Rule 12(b)(6) with leave to amend. *See* August 5, 2018 Order ("Order"), ECF No. 201. The Court dismissed one claim challenging the EOS Disability Search Practice under the ADA with prejudice and without leave to amend. *Id.* On August 19, 2019, Plaintiffs filed the TAC. *See* TAC, Docket No. 205. On September 25, 2019, ACT filed a motion to dismiss certain claims in the TAC under Rule 12(b)(6). ECF No. 218. On November 18, 2019, the Court granted ACT's motion as to all claims under the Rehabilitation Act (Seventh and Ninth Counts) and denied ACT's motion in all other respects. ECF No. 243.

After the hearing, the Parties engaged in extensive settlement and mediation discussions. *See* Creed Decl. ¶¶ 8-15. The Parties participated in two mediations, one on January 31, 2020 and one on April 30, 2020 before the Honorable Louis Meisinger. The Parties engaged in extensive telephonic negotiations in between and after the mediations until they reached an agreement in principle. The Parties heavily negotiated the terms of a final agreement. On September 2, 2020, the Parties entered into the Settlement Agreement and Proposed Consent Decree (the "Settlement Agreement") that is before the Court on this motion. *See* Creed Decl., Ex. 1 (the Settlement Agreement).

**C. <u>Terms of the Settlement</u>**

As originally detailed in Plaintiffs' Motion for Preliminary Approval, ECF No. 273, the Settlement Agreement provides monetary compensation to three classes of ACT examinees and injunctive relief to two classes of ACT examinees. Because the

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

class definitions for the types of relief are different, the discussion regarding the settlement terms is divided into the consent decree and the monetary damages. In entering into the Settlement Agreement, ACT does not admit or concede any liability or wrongdoing whatsoever to Plaintiffs.

**1. Benefits under Consent Decree to all U.S. Class Members**

The Consent Decree, which Plaintiffs request the Court enter as part of Final Approval effective as of the Effective Date of the Settlement Agreement, seeks to certify the two following classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure:

> All individuals in the United States who meet either of the following criteria: (a) took the ACT Test through Special Testing at any time or (ii) provided an Eligible SPS Question 8 response at any time.

Settlement Ag. ¶ 3(b)(ii); Consent Dec. § 5(a).[3] An "Eligible SPS Question 8" is defined so as to capture an examinee who told ACT he or she had a disability and ACT's policy as of the commencement of this litigation was to report those responses on college score reports.

Each of these individuals would have been subject to the practices of ACT that will be enjoined by the Consent Decree. Moreover, the class definition is not time-bound. The class would expand as more examinees take the ACT Test through Special Testing, giving those examinees a right to enforce the injunctions. The Consent Decree provides permanent and substantial benefits to the class members by prospectively remedying all three of the challenged practices.

- *Ban on Alleged Score Flagging Practices*: Section 7(a), 7(b), 7(c), and 8(a) of the Consent Decree remedy the Alleged Score Flagging Practices – nationwide and forever. Consent Dec. §§ 7-8. They forbid ACT from disclosing an examinee's disabilities or receipt of accommodations on score reports, using "SCHOOL" to

[3] The Proposed Consent Decree is part of the Settlement Agreement and Proposed Consent Decree. It immediately follows the signatures of the Parties.





PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

identify examinees with accommodations, and using examinee's disability or accommodations as a factor in assigning ACT ID numbers to examinees. Section 7 of the Consent Decree also permanently forbids ACT from inquiring into an examinee's disability status for reasons unrelated to the provision of testing accommodations. Consent Dec. § 7. This provision is intended to be a prophylactic measure to limit ACT's use of disability data collection. The Consent Decree contains a limited exception to this prophylactic measure under Section 10; any information collected by ACT may be provided *only* to a Qualified User as defined in the Consent Decree.[4] Through this exception, ACT preserves its ability to assist students in locating specialized postsecondary programs that serve students with disabilities and comply with all preadmission inquiry laws under Section 504 of the Rehabilitation Act of 1973.

- *Ban on Special Testing EOS Practice*: Section 8(b) of the Consent Decree requires ACT to allow all examinees to enroll in EOS in the same manner without regard to whether the examinee has accommodations or has a disability. Consent Dec. § 8(b). This would forbid the Special testing EOS Practice.

- *Ban on EOS Disability Search Practice*: Section 7(e) of the Consent Decree permanently enjoins ACT from engaging in the Alleged EOS Disability Search

[4] A Qualified User is "a college, university, entity that offers scholarships, or an entity that offers other educational or scholarship opportunities for individuals with disabilities that certifies in writing to ACT that it has programs or services for individuals with mental or physical impairments, is aware of the regulations regarding pre-admission inquiries under the Rehabilitation Act and, if applicable, has reviewed them, will access and use the information provided by ACT in compliance with all applicable laws, and has stated in writing to ACT that it will not disclose the individual's interest in learning about such opportunities to personnel who will make decisions regarding the individual's admission to any postsecondary program prior to any admission decision." Plaintiffs agreed to this exception with the understanding that the Rehabilitation Act has very limited exceptions to its general ban on pre-admission disability inquiries by colleges and universities. 34 C.F.R. § 104.42(c). While the Court has tentatively ruled ACT is not subject to the Rehabilitation Act, it is generally known that virtually every college and university is subject to the Rehabilitation Act to the extent students receive federally funded scholarships, grants, or loans. *See Grove City Coll. v. Bell*, 465 U.S. 555 (1984).

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

Practice or any other practice whereby examinees could be searched on the basis of their disability, disability type, accommodations or absence of accommodations. Consent Dec. § 7(e).

Because the Injunctive Relief Class certified under the Consent Decree are being certified under Rule 23(b)(2), the Court agreed that no notice program would be required. *See* Prelim. Approv. Op. at 6.[5] The release of claims under the Consent Decree covers only federal and State claims for injunctive relief; the release of claims in the Consent Decree would not release claims for money damages such class members under the Consent Decree may have under State or federal law. Consent Dec. § 16.

**2. Money Damages under Settlement Agreement to California Class Members**

The Settlement Agreement provides money damages to the following two California Settlement Classes to be certified for settlement purposes under Rule 23(b)(3):

*California Disclosure Subclass*: All individuals who meet all of the following criteria in connection with any single administration of the ACT Test according to ACT's records: (a) took an ACT Test on or after September 1, 2002, and on or before August 2, 2020; (b) resided in California at the time they took the ACT Test or took the ACT Test in California; and (c) satisfies at least one of the following criteria: (i) such individual provided an Eligible SPS Question 8 Response or (ii) such individual was administered the exam through Special Testing.

*California EOS Subclass*: All individuals who meet the following criteria in connection with any single administration of the ACT Test according to ACT's records: (a) took an ACT Test through Special Testing on or after September 1, 2007, and before August 2, 2020; (b) resided in California at the time they took the ACT Test or took the ACT Test in California; and (c) left the response to the EOS enrollment question blank on the Special Testing answer folder for at least one exam.

[5] KCC did cause notice of the Consent Decree to be delivered to California Class Members as part of the notice program for the damages class.





PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

Settlement Ag. ¶ 3(b)(i). Examinees in the California Disclosure Subclass have been subject to the Alleged Score Flagging Practice and the EOS Disability Practice; examinees in the California EOS Subclass have been subject to the Special Testing EOS Disability Practice. While the class definitions set the last date of class membership as the date ACT confirmed it completed its system changes to bring its operations into compliance with the Consent Decree, ACT has provided the requisite confirmation and told counsel for Plaintiffs that such date is August 2, 2020. Settlement Ag. ¶¶ 3(b)(i) & 4(a)(i); Creed Decl. ¶ 3.

California Class Members will be entitled to their pro rata share in the Net Settlement Amount. Settlement Ag. ¶ 5(b). Based on the definition of the Net Settlement Amount, the Net Settlement Amount is equal to $11,741,969.78. Robinson Decl. ¶ 16. Counsel for Plaintiffs are requesting attorney's fees of $3,921,365.77, for reasons noted below, which is below the cap under the Settlement Agreement. Settlement Ag. ¶ 9. Plaintiffs request Service Awards of $5,000 for each Class Representative, for a total of $50,000, which is the cap under the Settlement Agreement. Settlement Ag. ¶ 2 (definition of "Service Award"). Administrative costs are $208,030.22. Robinson Decl. ¶ 16.

A claimant is entitled to one or two shares of the Net Settlement Amount depending on whether the claimant is in one or both of the California Settlement Classes. If the claimant is a member of the California Disclosure Subclass or the California EOS Subclass, but not both, the claimant is entitled to one share. Settlement Ag. ¶ 5(e)(i). If a claimant is a member of both such subclasses, the claimant is entitled to two shares. Settlement Ag. ¶ 5(e)(ii). Every member of the California EOS Subclass is by definition a member of the California Disclosure Subclass. Creed Decl. ¶ 16(b). To maximize efficiency and give as much money to class members as possible, there is expressly no claims process, with a limited exception to the extent the Settlement Administrator determines a claim-form process

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

would be necessary to identify California Class Members who cannot be definitively identified from the available data. Settlement Ag. ¶ 5(c). Each California Class Member agrees to release all claims against ACT related to the facts alleged in the TAC. Settlement Ag. ¶ 7(a). Class members in the Injunctive Relief Class who are not in the California Settlement Classes, and thus would not be entitled to compensation, would ***not*** be releasing claims they may have for money damages under State or federal law against ACT. Settlement Ag. ¶ 7(a).[6]

As of now, there are approximately 56,049 unique individuals in the California Disclosure Subclass and 9,699 unique individuals in the California EOS Subclass. Robinson Decl. ¶¶ 12-13. Thus, based on Net Settlement Amount noted above, (i) a claimant in the California Disclosure Subclass but not the California EOS Subclass would receive approximately $178.59, and (ii) a claimant in the California EOS Subclass (who is by definition also in the California Disclosure Subclass, thus earning two shares of the Net Settlement Amount) would receive approximately $357.18.[7] Creed Decl. ¶ 37.

**D. <u>Notice Program</u>**

In accord with the Settlement Agreement and the Preliminary Approval Order, third-party administrator KCC caused notice of the Settlement, substantially in the forms of notice set forth in the Settlement Agreement, to be delivered to California Subclass members by mail (to 26,623 class members), by email (to 43,006 class

[6] This follows from the definition of "Releasing Plaintiffs," which is defined as the named plaintiffs and "Eligible Claimants." Settlement Ag. ¶ 1. Eligible Claimants are members of the California Settlement Classes entitled to compensation under the Settlement Agreement. Settlement Ag. ¶ 1.

[7] Plaintiffs' Motion for Preliminary Approval noted that a claimant in the California Disclosure Subclass but not the California EOS Subclass was expected to receive $179.26, and a claimant in the California EOS Subclass was expected to receive $358.53. *See* P.'s Mot., ECF No. 273 at 9:22-10:1. The one-dollar difference in per-claimant recovery is due to higher-than-expected Administrative Costs and a net increase of approximately 15 unique class members identified through further searches of ACT's records and after further de-duplication. In Plaintiffs' submission of their motion for preliminary approval, they expected up to 60 additional individuals to be added to the class size. *See* Creed Decl. ¶ 16(c).



PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

members) and by publication in *USA Today*. Robinson Decl. ¶¶ 4-9. KCC also established a settlement website (www.ACTClassAction Settlement.com) and a telephone hotline dedicated to the settlement and included the website URL and phone number on all notices. *Id.* at ¶¶ 10-11. Notice was directed to the class that, at the Fairness Hearing, Class Counsel would seek from the Settlement Amount attorney's fees and expenses of up to $4 million (which is the request made by this motion), and that the Class Representatives would seek from the Settlement Amount service awards of up to $5,000 each. Robinson Decl. Ex. A-D. Two class members requested exclusion from the Settlement, and no class member filed objections. *Id.* at ¶¶ 14-15.

## III. THE SETTLEMENT MERITS FINAL APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure Rule 23(e) requires district courts to approve class action settlements. *See* Fed. R. Civ. P. 23(e). In doing so, there is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). Where the parties arrive at a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Station v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). This ratification process involves a two-step inquiry. First, the court decides if a class exists. At the second step, courts consider whether "a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Courts examine "the settlement taken as a whole, rather than the individual component parts ... for overall fairness." *Hanlon*, 150 F.3d at 1026.

Preliminary approval establishes an "initial presumption of fairness." *See In re General Motors Corp.*, 55 F.3d 768, 784 (3d Cir. 1995). This Court has already preliminarily approved the settlement.

### B. The Court Should Finally Certify the Class for Settlement Purposes

Class certification is appropriate where: "(1) the class is so numerous that

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Certification of a class seeking injunctive relief also requires the "party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification of a class seeking monetary compensation also requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In granting preliminary approval, the Court analyzed each requirement for certification for settlement purposes met and found each was met. *See* Prelim. Approval Op. at 8-10; Order Granting P.'s Mot. for Prelim. Approv., ECF 274 at ¶¶ 9-13.[8] This remains true. Nothing has occurred since the Court's preliminary approval order to change the conclusion that the classes satisfy the numerosity, commonality, typicality, adequacy of representation, or predominance requirements. *See* Creed Decl. ¶¶ 16-31

**C. <u>The Settlement Is Fair, Adequate, and Reasonable</u>**

In order to approve a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable."

[8] While the Court sought in its tentative opinion clarification on Plaintiffs' standing to seek injunctive relief, counsel for Plaintiffs clarified at the hearing to the satisfaction of the Court that the Plaintiffs alleged adequate standing on the basis of their specific, firm, and definite intent to order score reports from ACT for purposes of transferring colleges. *See* Third. Am. Compl. ¶¶ 173, 183. The Supreme Court has held a student's intent to transfer affords the student standing when challenging a policy applicable to the college admissions process. *See Gratz v. Bollinger*, 539 U.S.C 244, 262 (2003) (plaintiff "alleged" he was "able and ready" to apply as a transfer and thus had standing to challenge a college-admission policy as discriminatory).

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

*Hanlon*, 150 F.3d at 1026.

Rule 23(e)(2) establishes certain factors for the Court to consider in deciding preliminary approval. The court "may approve [the proposed settlement] only after a hearing and only on finding that is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, the Court may evaluate any or all of a set of factors set forth by the Ninth Circuit in deciding final approval: "(1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). This Court has previously ruled that it "would apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent." *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, Case No. 17-cv-1490-GW (C.D. Cal. Oct. 10, 2019).

**1. Adequacy of Representation (Rule 23(e)(2)(A))**

The Court concluded in its preliminary approval opinion that it was "satisfied that Plaintiffs' counsel are experienced, competent lawyers who have been tenacious in their litigation of this action thus far." Prelim. Approv. Op. at 13; *see also* Creed Decl. ¶¶ 32-34. This remains true. In fact, since the date of the Court's order, counsel

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

for Plaintiffs ensured class members covered by the notice program had more opportunities to receive notice and followed up on behalf of over a hundred class members seeking information about the Settlement. Creed Decl. ¶ 38.

**2. Arm's Length Negotiations (Rule 23(e)(2)(B))**

The Court found this factor weighed in favor of preliminary approval. Prelim. Approv. Op. at 13-14. The Court recognized the Settlement was agreed to under the auspices of a respected mediator, did not see "any red flags" in the Settlement indicating collusion, and followed a "lengthy and highly contested litigation process." *Id.* at 14; *see also* Creed Decl. ¶¶ 8-15. This remains true.

**3. Adequacy of Proposed Relief (Rule 23(e)(2)(C))**

**(a) Costs, Risks, and Delay of Trial and Appeal (Rule 23(e)(2)(C)(i))**

The Court recognized in its preliminary approval order that the recovery of $4,000 in statutory damages under the Unruh Act was "far from certain" due to the existence of arbitration clauses, the possible applicability of the statute of limitations, and a defense that the discriminatory practices may have aided college applicants. Prelim. Approv. Op. at 15. "Given these uncertainties, the Court is satisfied that this monetary relief is fair, adequate, and reasonable given the potential risk and expense of the lengthy litigation (or arbitration) that lay ahead." *Id.*[9] In fact, the fact an appeal would delay and increase costs of this litigation existed at the time of settlement. The Parties had pending before the Ninth Circuit an interlocutory appeal on numerous arbitration issues, which would potentially delay, or deny, judicial relief for thousands of class members by at least 18 months. Creed Decl. ¶ 39.

---

[9] As noted supra fn. 5, the monetary relief is approximately $1 less per class member than anticipated in the motion for preliminary approval.



PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**(b) Effectiveness of Proposed Method of Distribution (Rule 23(e)(2)(C)(ii))**

Monetary payment will be distributed to the class members without any claims process, maximizing recovery for class members, increasing efficiency of the administrative process, and reducing barriers to participation. Settlement Ag. ¶ 5(c).[10] Checks will be mailed to all class members, and class members had an opportunity to, and many did, update their current physical address.

**(c) Attorney's Fees and Various Costs (Rule 23(e)(2)(C)(iii))**

This Court previously recognized that it has discretion to employ either the lodestar method or the percentage-of-recovery method in awarding attorney fees in common fund settlements, like the one at issue here. *Id.* at 15. The Court also said it was "satisfied that the attorney fee amount that Plaintiffs' counsel seek initially" – 25% of the common fund – "appears reasonable." *Id.* at 16. Twenty-five percent of a common fund is the "benchmark" in the Ninth Circuit. *Id.* For reasons described below, Plaintiffs' counsel request that the Court use the percentage-of-recovery method and approve an award of $3,921,365.77 from the common fund to Plaintiffs' counsel, which represents 24.5% of the common fund.

The Court also was "satisfied" that the service awards of $5,000 to each of the Class Representatives was "consistent with an equitable treatment of the proposed class" and "well within the range regularly awarded by courts in the Ninth Circuit." *Id.* at 16. For reasons described below, Class Representatives request final approval of those Service Awards.

**4. Equitable Treatment of Class Members (Rule 23(e)(2)(D))**

The Court concluded in its preliminary approval opinion that the Settlement

---

[10] There is a limited exception to the extent the Settlement Administrator determines a claim-form process would be necessary to identify California Class Members, but the Settlement Administrator has yet to require a claim form of a class member and did not require one for any class member under the notice program.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

Agreement treats each class member equitably. Prelim. Approv. Op. at 16. This remains true.

**5. Identification of All Agreements Made in Connection with the Proposal (Rule 23(e)(3))**

Other than the Settlement Agreement, there is no agreement known to Plaintiffs' counsel that was made in connection with the Settlement Agreement.

**D. <u>The Parties Complied with the Notice Program Approved by the Court</u>**

The Court concluded that the Parties' proposed notice program would provide sufficient notice to class members. *Id.* at 17. The Parties complied with the notice program directed by the Court. Specifically, the Parties appointed KCC to act as the settlement administrative. *Id.* KCC caused an internet website, toll-free phone number, and email address to be created and maintained to communicate with class members. *Id.*; Robinson Decl. ¶¶ 10-11. KCC caused an email packet to be delivered to all email addresses on file with ACT for the class members, reaching 43,006 individuals. Robinson Decl. ¶¶ 7-8. KCC caused mail notice to be delivered to class members without an email address on file with ACT or where the email notice was determined to be undeliverable, reaching 24,695 individuals (after subtracting notices returned to sender and adding from among the returned notices those individuals for whom KCC was able to find updated mailing addresses). *Id.* at ¶¶ 4-6. KCC published a summary notice in the USA Today. *Id.* at ¶ 9.

**IV. THE COURT SHOULD AWARD CLASS COUNSEL $4 MILLION IN ATTORNEY'S FEES AND LITIGATION EXPENSES**

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, both provisions apply: California's Unruh Act authorizes recovery of attorney's fees, and the federal ADA authorize recovery of attorney's fees, litigation expenses, and costs, *see* Cal. Civ. Code § 52(a),

42 U.S.C. § 12205, and the Parties' agreement authorizes attorney's fees and costs up to $4 million, *see* Settlement Ag. ¶ 9.

### A. <u>The Court Should Approve an Award of $3,921,365.77 in Attorney's Fees to Class Counsel from the Common Fund</u>

Where, as here, there is a common fund, courts have discretion under California and federal law to choose among two different methods for calculating a reasonable attorney's fee award. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016).

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. *See Hanlon*, 150 F.3d at 1029. Once the lodestar has been determined, the "figure may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* The lodestar method is typically utilized when the relief obtained is, unlike here, "not easily monetized." *Bluetooth*, 654 F.3d at 941.

Under the percentage of recovery method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 893 (C.D. Cal. 2016). This method is typically used where, as here, attorney's fees will be paid out of a common fund. *See Bluetooth*, 654 F.3d at 942; *see Jiangchen*, 2019 WL 5173771 at *5.

The Ninth Circuit has determined that "25% of the [common] fund [is] the benchmark for a reasonable fee award." *Bluetooth Headset*, 654 F.3d at 942. In "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). When determining the benchmark percentage to be applied in a given case, courts consider: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

Plaintiffs request $3,921,365.77 in attorney's fees, which amounts to 24.5% of the total recovery, a small adjustment below the benchmark. The Court has previously concluded, assuming Plaintiffs' counsel would request $4 million in fees, that "the attorney fee amount that Plaintiffs' counsel seek initially appears reasonable." Prelim. Approv. Op. at 16.

**1. Results Achieved for the Class**

Plaintiffs have achieved a substantial monetary and nonmonetary recovery for the class members. As to the monetary recovery, the maximum exposure of $4,000 in statutory damages under the Unruh Act for each and every class members is "far from certain." Prelim. Approv. Op. at 15. It would assume that the Class Representatives could certify a class under Plaintiffs' theories outside a settlement class, prevail on the interlocutory appeal related to the Court's arbitration rulings before the Ninth Circuit, prevail on their theory for tolling the statute of limitations, prevail on convincing the Court to certify the same class period as the settlement classes, prevail on the merits at summary judgment in an area of law ("score flagging") that this Court has described as having a "paucity of relevant case law," avoid potential mootness defenses due to a Class Representative transferring or graduating from college, prevail on a potential due process challenge to the $4,000 statutory damages under the Unruh Act regardless of the actual value of a class members' claims, prevail in individual arbitrations to the extent arbitration is the proper forum, and convince a jury, the Court, and/or arbitration panels of the merits of Plaintiffs' claims. At one point, this Court believed every class member may be subject to arbitration. These risks render the $178.59 to $357.18 recovery for class members a good result.

As to the nonmonetary recovery, Plaintiffs' counsel secured the cessation of each and every policy or practice being challenged as discriminatory – which amounts to a complete recovery.

**2. Risk of Litigation**

"The risk that further litigation might result in Plaintiffs not recovering at all,

particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47. This case involved complicated legal issues. There have been three prior score flagging cases in the history of disability-rights case law, *Breimhorst v. Educ. Testing Serv.*, No. C-99-CV-3387, 2000 WL 34510621 (N.D.Cal. Mar. 27, 2000), *Dep't of Fair Emp't and Hous. v. Law Sch. Admission Council, Inc.*, 896 F. Supp. 2d 849 (N.D.Cal. 2012), and *Doe v. Nat'l Bd. of Med. Ex.*, 199 F.3d 146 (3d Cir. 1999). While two were in Plaintiffs' favor, one, the *Doe* case, was not (though Plaintiffs maintain it was based on superseded law). The arbitration issues were complicated, unsettled, and subject to substantial reasonable disagreement, requiring nineteen briefs to be filed in this Court, including supplement briefing requested by the Court, ECF No. 24, 43, 55, 66, 69, 74 (order requesting supplemental briefing), 76, 77, 81, 82, 100, 101, 102, 107, 108, 111, 112, 113, 121 & 122, satisfying this Court's and the Ninth Circuit's standard for an interlocutory appeal, ECF No. 126 & 151 and resulting in full briefing on an interlocutory appeal of the issues. The arbitration issues applied to a substantial number of class members, potentially excluding them from a certified class going to judgment after a jury trial.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

### 3. Skill Required and Quality of Work

This action required unique legal skills and abilities. It involved a relatively niche area of disability law (score flagging), required extensive pre-filing investigation of Plaintiffs' claims where Plaintiffs had no visibility into those claims (i.e. Plaintiffs never received their college score reports and believed they were part of EOS when in fact they were not), and required vigorous prosecution from the outset with the filing of a motion for preliminary injunction to stop the practices in the then-imminent college admissions season. Similarly, Plaintiffs' counsel have significant experience in complex litigation. Creed Decl. ¶¶ 32-34 & Ex. 6. Plaintiffs' counsel had to shepherd the case through a preliminary injunction, multiple arbitration motions, an interlocutory appeal on the arbitration motions, regular discovery

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

conferences before the magistrate judge, two motions to dismiss, and successful, though intense, settlement negotiations. Creed Decl. ¶¶ 4-15 & 41(a)-(n). Plaintiffs' counsel faced a vigorous defense from five separate defense firms: SmithAmundsen, Perkins Coie LLP, Litchfield Cavo LLP, Wilson Elser Moskowitz Edelman and Dicker LLP, and Ropes Majeski PC. *See* Dkt.

**4. Contingent Nature of the Fee**

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047. In this case, Plaintiffs' counsel have invested 3,843.5 hours of work, over three years, with no compensation. Creed Decl. Ex.4; Declaration of Marci Miller ("Miller Decl.") ¶ 5; Declaration of Jennifer Bennett ("Bennett Decl.") ¶¶ 10 & 12. Plaintiffs' counsel have done so without any certainty as to an amount of recovery. Indeed, at one point, this Court had ruled no Class Representative could avoid their arbitration agreements. *See* ECF No. 86.

**5. Awards Made in Similar Cases**

A 24.5% percentage-of-recovery award of attorney's fees would be consistent with awards of attorney's fees in other civil rights cases. According to a study intended to assist courts in determining similar awards, the mean percentage of the class recovery awarded in attorney's fees for civil rights cases was 24%, and the median was 23%, across all circuits.[11] Theodore Eisenberg, et al., "Attorney Fees and Expenses in Class Action Settlements: 1993-2008," 7 J. Emp. Leg. Studies 248, 262 tbl. 5 (2010) (hereinafter, the "Eisenberg & Miller Study") (submitted herewith at Creed Decl., Ex. 3).

---

[11] Considering that $72,860.32 constitute litigation expenses, the attorney's fee award in this case would equal 24.5%.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

**6. Lodestar Cross-Check**

The Ninth Circuit has encouraged district courts to cross-check percentage-of-recovery amounts against the lodestar method. *See Bluetooth*, 654 F.3d at 944. Under the lodestar method, courts "calculate[ ] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The Ninth Circuit has affirmed the use of an enhancement of up to 3.65 in conducting lodestar cross-checks. *See Vizcaino*, 290 F.3d at 1051. In *Vizcaino*, the Ninth Circuit decision attached an appendix of attorney's fee awards in common fund cases showing that the majority of multipliers ranged from 1.5 to 3.0. *Id.* at 1051 fn. 6 & App'x. *Vizcaino* quoted with approval the Third Circuit's view in *In re Prudential Ins. Co.*, 148 F.3d 283 (3d Cir. 1998) that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method if applied." *Id.* at 1051 fn. 6.

Here, counsel from Panish, Shea & Boyle LLP, Miller Advocacy Group, Public Justice (a nonprofit), and Gupta Wesller worked a total of 3843.5 hours on this case. Creed Decl. at Ex. 4; Miller Decl. ¶ 5; Bennett Decl. ¶¶ 10 & 12.[12] There are 275 entries on the docket, with voluminous motion practice, from the merits under Rule 12(b)(6) to arbitration, personal jurisdiction, motion to intervene, and discovery disputes. The litigation has lasted nearly three years. Discovery in the case involved six separate plaintiffs. The total lodestar for this case is $2,591,330.20. *See* Creed Decl. ¶ 41 & Ex. 4; Miller Decl. ¶ 5; Bennet Decl. ¶¶ 10 & 12. The requested fee of $3,921,365.77 represents a fractional multiplier of 1.51 to the lodestar.

An upward enhancement, or multiplier, of 1.51 to the lodestar is reasonable here. *First*, Plaintiffs' counsel agreed to take this case on behalf of the Class Representatives on a contingency fee basis and would not have taken this case other

[12] Public Justice and Gupta Wesller were retained as appellate counsel to lead all activities in this Court and before the Ninth Circuit related to the appeal.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

than on a contingency fee basis given counsel's expectation of a higher recovery if successful (assuming the risk of no recovery if unsuccessful). Creed Decl. ¶ 46. "[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," thereby "rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051. In fact, when this Court had initially concluded that arbitration barred nearly all the Class Representative claims, ECF No. 86, Plaintiffs' counsel had a serious risk of substantially less recovery in this action than expected. Yet, Plaintiffs' counsel diligently pursued all legal avenues for the Class Representatives, filing motions for reconsideration and for permission to take an interlocutory appeal, which were granted. Similarly, the Court twice granted in part ACT's motion to dismiss certain claims.

Newberg on Class Actions sets forth three indicia of high-risk cases, quoted below, that all favor an upward multiplier in this action:

(1) "one-off cases, where counsel could not rely on pleadings from prior cases and would be unlikely to open a new line of business based on the documents in the present case" – here, there were no pleadings from prior cases given the uniqueness of this area of law and the small number of standardized exam companies, ACT appears to have been the last American standardized testing company, to Plaintiffs' counsel's knowledge, that a plaintiff could allege continued to have score-flagging policies, and no pleadings in this case (or documents produced by ACT) would be the basis of bringing suit against ***another*** testing company engaged in similar policies, Creed Decl. ¶ 47;

(2) "cases in which counsel's actions not only enforced the law but were responsible for detecting the wrongdoing in first place" – here, there was no government enforcement action on which Plaintiffs' counsel piggybacked and, in fact, the opposite was true, as, preceding this settlement, California's Department of Fair Employment and Housing was investigating bringing a

government enforcement action of its own, Creed Decl. ¶ 48, and

(3) "cases in which counsel invested significant amounts of their own money without being able to share the risk across a series of firms" – here, there were no firms with their own clients in this litigation other than Plaintiffs' counsel, who co-counseled in their representation of the Class Representatives, Creed Decl. ¶ 49.

Rubenstein, *Newberg on Class Actions* (5th ed. 2020) § 15:87 (section on assessing reasonableness of lodestar multiplier in lodestar cross-check). The Newberg treatise suggests any one of these factors counsels in favor of adding 1 point to the multiplier. Plaintiffs believe each of these factors favors them, demonstrating the multiplier of 1.51 in the lodestar cross-check is reasonable.

The results achieved also support the conclusion that the lodestar-cross-check multiplier of 1.51 is reasonable, for three reasons. *First*, as noted above, there was at one point the risk of no monetary recovery to the class members in this action due to arbitration clauses. While a path later became available under a number of theories, the path was narrower than initially expected pending the outcome of the Ninth Circuit appeal. *Second*, the non-monetary benefits in the Consent Decree – which is nationwide and permanent – ensure that the largest standardized testing company in the world stops forever policies and practices that were alleged to discriminate against examinees with disabilities. *Third*, the Settlement Agreement has a zero-hassle claims process, as there is no claims process, ensuring that every class member is entitled to a monetary recovery without doing anything. A no-hassle claims process (i.e. no claims process at all) reflects the values behind this case, as people with disabilities are often deterred by "exclusionary qualification standards and criteria." *See* 42 U.S.C. § 12101(a)(5).

Finally, according to the Eisenberg & Miller Study, the fractional multiplier of 1.51 represents the median lodestar multiplier for cases with a recovery between 14.3 and 22.8 million, with the mean being 1.68, *see* Eisenberg & Miller Study (Creed

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

Decl. Ex. 3) at p. 274 tbl. 15, and is well below the mean multiplier of 1.99 for civil rights cases, *id.* at 272 tbl. 14.[13]

**B. <u>The Court Should Approve Reimbursement of $78,634.23 in Litigation Expenses from the Common Fund</u>**

As noted above, both the Settlement Agreement and the ADA permits recovery of all litigation expenses and costs. *See* 42 U.S.C. § 12205. "Attorneys may recover their reasonable expenses [in a class action] that would typically be billed to paying clients in non-contingency matters." *Sherman v. CLP Res., Inc.*, No. CV 12-11037-GW-PLAX, 2020 WL 4882415, at *3 (C.D. Cal. Aug. 6, 2020). Recovery of "litigation expenses" under the ADA has been given broad construction by the Ninth Circuit to include expert witness fees and travel expenses, implementing the intent of Congress to "respond to rulings of the Supreme Court that [certain] items such as expert witness fees, travel expenses, etc. be explicitly included if intended to be covered under an attorney's fee provision." *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) (quoting H.R. Rpt. No. 101-485(III) at 73). Plaintiffs' counsel have expended $78,634.23 in litigation expenses, as detailed in the accompanying declarations. Creed Decl. ¶ 43 & Ex. 5; Miller Decl. ¶ 6; Bennett Decl. ¶ 13.

**V. THE COURT SHOULD APPROVE CLASS REPRESENTATIVE SERVICE AWARDS IN THE AMOUNT OF $5,000 EACH**

This Court concluded in the preliminary order that it was "satisfied the service award [of $5,000] is consistent with an equitable treatment of the proposed class. The requested amount is well within the range regularly awarded by courts in the Ninth Circuit." Prelim. Approv. Op. at 16.

Class Representatives should be awarded $5,000 as a service or "incentive" award. Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in

[13] The median multiplier for civil rights cases is not reported.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Here, Class Representatives undertook tremendous reputation risk in bringing the action. Many were minors when the action was initially brought. Creed Decl. ¶ 52. Many feared bringing the action under their true identities due to the reputational consequences, seeking to proceed using fictitious identities, whereas others were willing to publicly bring the action in order to speak out against policies and practices of ACT they believed were wrong and illegal. Creed Decl. ¶¶ 52-53; Miller Decl. ¶¶ 13-14. Bringing this action may have inflicted the harm they sought to avoid – i.e. public disclosure of their disabilities to colleges and universities. Creed Decl. ¶ 50.

The Class Representatives also undertook substantial work on behalf of the class. They participated in the pre-filing investigation together with Plaintiffs' counsel, collecting documents and participating in interviews. Creed Decl. ¶ 53; Miller Decl. ¶ 15. Class Representatives reviewed drafts of the complaints and other motions applicable to their claims. Creed Decl. ¶ 54. The Class Representatives helped prepare numerous declarations in this action in motion practice. Creed Decl. ¶ 56; Miller Decl. ¶ 15. Certain Class Representatives, not subject to the arbitration ruling, each responded to voluminous discovery requested propounded on them individually, collecting documents, gathering information requested, and working with Plaintiffs' counsel to review and finalize responses. Creed Decl. ¶ 57; Miller Decl. ¶ 15. Most of the Class Representatives took on this extraordinary burden while they were either in their last year of high school or their first or second year of college. Miller Decl. ¶ 15. Finally, the service award amounts were part of the notice sent to class members, *see* Robinson Decl. Ex. A-D, and no class member has filed an objection, Robinson Decl. ¶ 15.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs request the Court grant all the relief requested in the notice of motion.

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

DATED: March 18, 2021

PANISH SHEA & BOYLE LLP

By: */s/ Jesse Creed*
Jesse Creed
Attorneys for Plaintiffs

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 11111 Santa Monica Boulevard, Suite 700, Los Angeles, CA 90025.

On March 18, 2021, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFFS FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT UNDER FED. R. CIV. P. 23(E), (2) FOR APPROVAL OF AWARD OF ATTORNEY'S FEES AND COSTS, AND (3) FOR APPROVAL OF CLASS REPRESENTATIVE SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 18, 2021, at Los Angeles, California.

/s/ Jaqueline Lucio
Jaqueline Lucio

**SERVICE LIST**
**Bloom v. Act, et al.**
**Case No. 2:18-cv-06749-GW-KS**

Eric L. Samore
Albert M. Bower
SMITHAMUNDSEN LLC
150 N. Michigan Avenue, Suite 3300
Chicago, IL 60601

Alisha C. Burgin
PERKS COIE LLP
1888 Century Park East
Suite 1700
Los Angeles, CA 90067

Attornevs for Defendants

G David Rubin
Hayk Ghalumyan
Litchfield Cavo LLP
251 South Lake Avenue Suite 750
Pasadena, CA 91101

Robert A Burgoyne
Perkins Coie LLP
700 Thirteenth Street NW Suite 600
Washington, DC 20005

Co-Counsel for Defendants

PANISH SHEA & BOYLE LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
310.477.1700 phone • 310.477.1699 fax